UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

Derrick Taylor,

        Defendant.

Court File No. 15-cr-91(JNE/LIB) (1)

**REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge upon Defendant Derrick Taylor's ("Defendant") Motion to Suppress Search and Seizure, [Docket No. 27], and Motion to Suppress, Admissions, and Answers, [Docket No. 28]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on June 12, 2015, regarding the parties' pretrial motions.[1] The parties requested an opportunity to submit supplemental briefing which was completed and the motions to suppress then taken under advisement on June 26, 2015.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Search and Seizure, [Docket No. 27], and Motion to Suppress Statements, Admission, and Answers, [Docket No. 28], be **DENIED**.

## I.  BACKGROUND AND STATEMENT OF FACTS

### A.  Background

Defendant is charged with one count of being an armed career criminal in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

---

[1]The Court addressed the parties' pretrial discovery motions by separate order. [Docket No. 34].

**B. Facts**

    1.  <u>January 10, 2014, Search Warrant</u>

The record presently before the Court indicates that, in December, 2013, Investigator Andrew Abrahamson of the Pine County Sheriff's Office made contact with a confidential informant (the "Hinckley CI") who told Investigator Abrahamson that Defendant and Kendall Taylor were selling marijuana and other controlled substances out of his residence located in Apartment A of a duplex with the address of 2485 Evergreen Court, in Hinckley, Minnesota ("the Hinckley residence"). (Gov't Ex. 1, 1).  The Hinckley CI, who had previously provided information that had been corroborated, told Investigator Abrahamson that the Hinckley CI had seen large amounts of marijuana in the Hinckley residence and had seen Defendant carrying a firearm on his person in the Hinckley residence. (<u>Id.</u> at 2).

In early January, 2014, Investigator Abrahamson directed the Hinckley CI to conduct a controlled buy of narcotics at the Hinckley residence. (<u>Id.</u>). The Hinckley CI met Kendall Taylor at the Hinckley residence, and, while being remotely monitored by law enforcement officers using an audio listening device, purchased marijuana from him.  (<u>Id.</u>).  At some point between January 8, 2014, and January 10, 2014, Investigator Abrahamson directed the Hinckley CI to conduct a second controlled buy of narcotics at the Hinckley residence. (<u>Id.</u>). The Hinckley CI again met with Kendall Taylor at the Hinckley residence and purchased marijuana from him. (<u>Id.</u>).  Investigating officers again remotely monitored the transaction using an audio listening device. (<u>Id.</u>).

On January 10, 2014, Investigator Abrahamson applied for a warrant to search the persons of Kendall Taylor and Defendant, the Hinckley residence, and any and all vehicles located on the property. (<u>Id.</u> at 1).  The Honorable James T. Reuter, District Judge for the Tenth

Judicial District, State of Minnesota, determined that probable cause supported the issuance of the search warrant. (Id. at 4). Officer Abrahamson and other law enforcement officers executed the warrant to search the Hinckley residence on January 14, 2014. (Id. at 7).

### 2. August 2014, Search Warrants

In July or August of 2014, Officer James Burns of the Minneapolis Police Department received information from a confidential informant (the "Minneapolis CI") that a black male going by the street name of "Wood" was engaging in the illegal sale and distribution of large amounts of marijuana on the north side of Minneapolis. (Gov't Ex. 2[2], 2). The Minneapolis CI provided Officer Burns with a physical description of "Wood." (Id.). The Minneapolis CI, whom Officer Burns indicated had previously provided reliable, corroborated information in the past, told Officer Burns that "Wood" possibly lived in the southeast area of Minneapolis, used a blue suburban in his sale and distribution of narcotics, and used two different addresses on the north side of Minneapolis to store large quantities of marijuana and firearms. (Id.).

Officer Burns reviewed Minneapolis police reports and learned that Defendant had been documented as using the street name "Wood" in relation to an earlier narcotics search warrant in 2001. (Id.). Officer Burns believed that Defendant also matched the physical description of "Wood" given by the Minneapolis CI. (Id.). He also learned that Defendant was the registered owner of a blue 2001 Chevrolet suburban bearing Minnesota license plate 115-AKW ("blue

---

[2] As Government Exhibit 2, the Government submitted a folder containing three separate collections of documents. The collections all contain an application for a search warrant authored by Officer Burns, an affidavit authored by Officer Burns in support of the application, a search warrant issued on August 15, 2015, by the Honorable Phillip C. Caruthers, District Judge for the Fourth Judicial District, State of Minnesota, and a search warrant return for each search warrant. One search warrant is for Defendant's person. One search warrant is for Defendant's vehicle, a blue Chevrolet suburban, bearing Minnesota license plate 115-AKW. One search warrant is for a townhouse located at 1026 11th Avenue Southeast, Minneapolis, Minnesota. The probable cause statements, all appearing on pages two and three of each collection of documents, authored by Officer Burns in each the affidavits in support of each application are identical. For ease of reference, the Court cites to only the collection of documents containing the search warrant expressly challenged by Defendant, the warrant to search Defendant's Minneapolis residence.

2001 suburban"), and that Defendant had been stopped on July 5, 2014, while driving that vehicle, during which marijuana was recovered from it. (Id.).

Officer Burns showed the Minneapolis CI Defendant's driver's license photograph, and the Minneapolis CI positively identified Defendant as "Wood." (Id.).

During the course of the investigation, law enforcement identified 1026 11th Avenue Southeast, Minneapolis, Minnesota (the "Minneapolis residence") as Defendant's residence. (Id.). Officers watching the Minneapolis residence had seen the blue 2001 suburban on the street and in the townhouse parking lot at various times of the day and had seen Defendant leave the Minneapolis residence using the blue 2001 suburban. (Id.).

At some time between August 12, 2014, and August 15, 2014, Officer Burns directed the Minneapolis CI to conduct a controlled buy of marijuana from Defendant. (Id. at 3). The Minneapolis CI made contact with Defendant and was directed to a pre-determined meeting site. (Id.). Officers conducting surveillance of Defendant's Minneapolis residence then observed as Defendant exited the Minneapolis residence and drove the blue 2001 suburban to a separate house located at 1914 Oliver Avenue North, in Minneapolis, Minnesota ("Oliver Avenue house"). (Id.). Officers observed as Defendant entered the Oliver Avenue house by the front entrance and then departed a short time later. (Id.). Defendant, while still being observed by officers, then drove to the pre-determined location to meet the Minneapolis CI, where Defendant sold the Minneapolis CI a quantity of marijuana. (Id.).

On August 15, 2014, Officer Burns applied for warrants to search Defendant's person, Defendant's Minneapolis residence at 1026 11th Avenue Southeast, and the blue 2001 suburban. (Id. at 1-4). That same day, the Honorable Phillip C. Caruthers, District Judge for the Fourth

Judicial District, State of Minnesota, determined that probable cause supported the issuance of the search warrants. (Id. at 6).

On August 20, 2014, law enforcement officers executed the August 15, 2014, warrants. (June 12, 2015, Motions Hearing, Digital Recording at 2:36:00 p.m.).[3]

On August 20, 2014, while executing the August 15, 2014, warrants, the officers stopped Defendant as he was returning to the Minneapolis residence in the blue 2001 suburban. (Id. at 2:36:30 p.m., 2:40:50 p.m.). The officers arrested Defendant, handcuffed him, placed him in a squad car, and transported Defendant to a local office of the Federal Bureau of Investigation ("FBI") to be interviewed. (Id. at 2:36:50 p.m.; 2:41:10 p.m.). The arresting officers did not question Defendant at the scene of his arrest. (Id. at 2:36:45 p.m.).

At the FBI office, Defendant was directed into an interview room. (See generally, Government's Ex. 3). For several minutes after Defendant was initially placed in the interview room, Officer Burns first asked Defendant a number of questions regarding his identifying information. (Id. at 7:40-11:00). Approximately twelve minutes after Defendant was placed into the interview room, Officer Burns read Defendant the Miranda warnings. (Id. at 11:50-12:10). When asked, Defendant indicated that he had understood the Miranda warnings. (Id. at 12:10).

At several points during the post-Miranda interview, Defendant admitted that there were bullets in the Minneapolis residence. (Id. at 15:20-15:45, 20:10). Defendant told Officer Burns that the bullets had been left in Defendant's vehicle and where the bullets could be found in the Minneapolis residence. (Id. at 15:20-15:45). Defendant was ultimately released following the interview.

---

[3] Officers had executed a separate search warrant for the Oliver Avenue house the day before, but had not found drugs or firearms at that location. (June 12, 2015, Motions Hearing, Digital Recording at 2:34:50 p m., 2:38:15 p m., 2:40:10 p m.). Officer Burns testified that he had been informed by SWAT team officers that drugs at that location had been "flushed." (Id. at 2:40:10 p m.).

## II. DEFENDANT'S MOTION TO SUPPRESS SEARCH AND SEIZURE, [DOCKET NO. 27]

Defendant moves the Court to suppress all evidence gathered as a result of the executions of the January 10, 2014, warrant to search the Hinckley residence at 2485 Evergreen Court and the August 15, 2014, warrant to search the Minneapolis residence at 1026 11th Avenue Southeast. In his memorandum in support of his motion, Defendant indicated that his challenge to the January 14, 2014, warrant is limited to a "four corners" review of the sufficiency of the probable cause supporting the warrant. Defendant also challenges the probable cause supporting the August 15, 2014, warrant to search his Minneapolis residence, arguing that the information contained in Officer Burns' affidavit in support of the search warrant failed to establish a nexus between Defendant's sale of marijuana and the Minneapolis residence and, in any event, the August 15, 2014, warrant to search Defendant's Minneapolis residence was stale by the time the officers executed the warrant on August 20, 2014.

### A. Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462

U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the issuing court] had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B.    Analysis**

1.    January 10, 2014, Search Warrant

Defendant's challenge to the January 10, 2014, warrant is devoid of factual or legal argument specifically addressing that search warrant. Because Defendant has offered no sufficiently specific factual or legal grounds for suppression of evidence gathered as a result of

the execution of the January 10, 2014, warrant at the Hinckley residence, the Court could recommend summarily denying Defendant's Motion to Suppress Search and Seizure, [Docket No. 27], as to evidence gathered as a result of the execution of that search warrant solely on the basis that Defendant has failed to meet his burden of production. United States v. Jones, No. 09–cr–260 (DWF/RLE), 2009 WL 4723341, at *4 (D.Minn. Dec. 2, 2009) (Erickson, C.M.J.) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987); United States v. Quiroz, 57 F.Supp.2d 805, 822–23 (D.Minn.1999) (Mason, M.J.), adopted by 57 F.Supp.2d 805, 811 (D.Minn. 1999) (Kyle, J.)). Nonetheless, in an abundance of caution, the Court will address the merits of the Defendant's Motion. See in accord, Id., (citing United States v. Edwards, 563 F.Supp.2d 977, 995 (D.Minn. 2008) (Mayeron, M.J.), adopted by 563 F.Supp.2d 977, 984 (D.Minn. 2008) (Frank, J.).

Defendant challenges the sufficiency of the probable cause supporting the warrant to search the Hinckley residence. The application for the search warrant and supporting affidavit were drafted by Investigator Abrahamson on January 10, 2014. (Gov't Ex. 1).

Based on the information provided in Investigator Abrahamson's affidavit in support of the application for the search warrant, Judge Reuter had a substantial basis upon which to conclude that probable cause existed to issue the January 10, 2014, search warrant for the Hinckley residence.

In his affidavit in support of the search warrant application, Investigator Abrahamson stated that, in August of 2012, he first received information that linked Defendant to the sale and distribution of controlled substances. (Gov't Ex. 1, 2). Since August, 2012, Investigator Abrahamson had received additional information from multiple sources indicating that Defendant was selling large amounts of marijuana. (Id.). In December, 2013, Investigator

Abrahamson made contact with the Hinckley CI. (Id.). The Hinckley CI had previously provided information that had been corroborated. (Id.). The Hinckley CI told Investigator Abrahamson that Defendant and Kendall Taylor were selling marijuana and other controlled substances out of the Hinckley residence. (Id.). The Hinckley CI also told Investigator Abrahamson that the Hinckley CI had seen large amounts of marijuana and currency in the Hinckley residence and had seen Defendant carrying a firearm on his person in the Hinckley residence. (Id.).

In early January, 2014, the Hinckley CI, directed by Investigator Abrahamson, conducted two controlled buys of marijuana at the Hinckley residence, including one that took place no more than two days before Investigator Abrahamson applied for, and received, the search warrant. (Id.). While being remotely monitored by audio connection by Investigator Abrahamson, the Hinckley CI met with Kendall Taylor at the Hinckley residence on both occasions and purchased marijuana from him. (Id.).

Part of the information in Investigator Abrahamson's affidavit in support of the search warrant application is based on statements made by the Hinckley CI. "The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (internal citations omitted). In addition, "[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." United States v. Williams, 10 F.3d 590, 593-94 (8th Cir. 1993) (citations omitted). In the present case, Investigator Abrahamson stated in his affidavit in support of the search warrant application that the Hinckley CI had previously provided information that had been corroborated. Notably, Investigator Abrahamson's statement regarding the information

provided by the Hinckley CI is vague as he does not specify whether the Hinckley CI provided the information in a prior case or whether the Hinckley CI has a history of being truthful. However, in the present case, Investigator Abrahamson's decision not to provide more details about the Hinckley CI does not prevent the Court from inferring that the Hinckley CI was reliable. See United States v. Caswell, 436 F.3d 894, 899 (8th Cir. 2006) (noting that an officer's failure to include an indication that an informant had provided reliable information *in the past*, did not prevent a finding that the informant was reliable where the affidavit listed evidence corroborating the informant's statements).

Investigator Abrahamson conducted two independent controlled buys through the Hinckley CI that corroborated the essential information provided by the Hinckley CI that had formed part of the probable cause to search the Hinckley residence, namely that narcotics transactions were being conducted at the Hinckley residence. Those controlled buys alone were sufficient to provide Judge Reuter with a substantial basis to conclude that evidence of narcotics transactions could be found at the Hinckley residence. United States v. Smith, 266 F.3d 902, 905 (8th Cir. 2001) ("The affidavit, which reported the police surveillance of the controlled transactions, was sufficient to provide probable cause even though the confidential informant was not previously known to the police") (citations omitted).

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Search and Seizure, [Docket No. 27], to the extent the motion seeks to suppress evidence gathered as a result of the execution of the January 10, 2014, search warrant at the Hinckley residence.

## 2. August 15, 2014, Search Warrant

Defendant also moves the Court to suppress evidence gathered as a result of the execution of the warrant to search his Minneapolis residence at 1026 11th Avenue Southeast. In support, Defendant argues that the information provided in the affidavit supporting the application for the search warrant did not provide a nexus between Defendant's criminal activities and Defendant's Minneapolis residence, and in any event, any probable cause established by the affidavit supporting the application for the August 15, 2014, search warrant was stale when the officers executed the warrant on August 20, 2014, five days after the search warrant was issued. The Government asserts that probable cause existed to search the Minneapolis residence, and in any event, the officers relied on the warrant in "good faith."

a. Nexus to the Minneapolis Residence

Defendant contends that the information in Officer Burns' affidavit supporting the application for the August 15, 2014, search warrants failed to provide probable cause to search Defendant's Minneapolis residence.

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)).

In his affidavit supporting the applications for the August 15, 2014, search warrants, Officer Burns stated that, in July or August of 2014, he received information from the Minneapolis CI that an individual going by the street name of "Wood" was engaging in the illegal sale and distribution of large amounts of marijuana on the north side of Minneapolis. (Gov't Ex. 2, 2). Officer Burns indicated that the Minneapolis CI had previously provided reliable information in the past that had been corroborated. (Id.). The Minneapolis CI described

the physical appearance of "Wood" to Officer Burns as a five-foot-ten black male, approximately 30 years old, with a medium to stocky build, light complexion, and long braided hair. (Id.). The Minneapolis CI also told Officer Burns that "Wood" uses a blue suburban in his sales and distributions of narcotics, and he indicated that "Wood" possibly lived in the southeast area of Minneapolis, as well as, used two different addresses on the north side of Minneapolis to store large quantities of marijuana and firearms. (Id.).

Based on an earlier search warrant for narcotics in 2001, Officer Burns learned that the street name "Wood" had been used by Defendant previously. (Id.). Officer Burns believed that Defendant matched the Minneapolis CI's physical description of "Wood," and when showed the Minneapolis CI Defendant's driver's license photograph, (Id.), the Minneapolis CI confirmed that Defendant was the person the Minneapolis CI had referred to as "Wood."

Officer Burns also confirmed that Defendant was the registered owner of a blue 2001 suburban, that Defendant had been stopped while driving that vehicle on July 5, 2014, and that marijuana was recovered from the vehicle as a result. (Id.).

Officer Burns also identified 1026 11th Avenue Southeast, Minneapolis, Minnesota (the "Minneapolis residence") as Defendant's residence, and law enforcement then established surveillance of the building. (Id.). Defendant's blue 2001 suburban was seen on the street and in the parking lot of the Minneapolis residence at various times of the day by officers conducting surveillance. (Id.). Defendant was also seen leaving the Minneapolis residence using the blue suburban at various times of the day. (Id.).

At some time between August 12, 2014, and August 15, 2014, Officer Burns directed the Minneapolis CI to conduct a controlled buy of marijuana from Defendant. (Id. at 3). The Minneapolis CI contacted Defendant while Defendant was at the Minneapolis residence. (Id.).

While officers observed, Defendant exited the Minneapolis residence, drove in the blue suburban to a house on Oliver Avenue, which he entered only briefly, and then went to a pre-determined site, where Defendant sold marijuana to the Minneapolis CI. (Id.).

Based on the statements listed above, Officer Burns applied for warrants to search Defendant's person, the blue 2001 suburban, and the Minneapolis residence for: drug proceeds and other items evidencing transactions using money from the sale of controlled substances; controlled substances and materials used in distributing controlled substances; documents relating to the sale and disposition of proceeds from the sale of controlled substances; firearms and firearm paraphernalia; cellular phones and the data therein; digital cameras and the photographs therein; photographs and other documents showing constructive possession or association.

Defendant no longer disputes in his supplemental briefing that the information contained in Officer Burns' affidavits supporting his August 15, 2014, applications for the search warrants was sufficient to provide probable cause to search Defendant's person or the blue 2001 suburban. Rather, Defendant argues that the information contained in those affidavits was insufficient to provide a reasonable basis to believe that evidence of narcotics transactions could be found at the Minneapolis residence. In support, Defendant argues that neither the Minneapolis CI nor the independent police investigation observed contraband or other indicia of criminal activity at the Minneapolis residence; that the Minneapolis residence was not geographically near the actual site at which the controlled buy occurred; and that, after receiving the request that led to the controlled buy, Defendant made a brief stop at a "stash" house after leaving the Minneapolis residence before heading to the site of the controlled buy.

The mere fact that neither the Minneapolis CI nor the investigating officers directly observed contraband or criminal activity at the Minneapolis residence does not prevent a finding that there was a nexus between Defendant's criminal activities as described by Officer Burns in his affidavits and the Minneapolis residence. A judge deciding whether to issue a search warrant is allowed to make reasonable inferences as to where contraband may be found. United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (citing United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). Indeed, there have been several cases in which the Eighth Circuit has upheld a finding that there was sufficient probable cause to search a defendant's home even though the only direct evidence of a suspect's narcotics trafficking was discovered elsewhere. See, e.g., Tellez, 217 F.3d 550.

For example, in Tellez, the probable cause to search the defendant's home was based on the statements in the investigating officer's affidavit in support of his application for a search warrant recounting two drug transactions that occurred away from Tellez' home. Id. at 549. A police informant initially telephoned Tellez with a request to buy illegal narcotics. Id. Tellez then drove directly from his own home to the informant's home, where the sale occurred. Id. Tellez told the informant that he could provide additional narcotics if desired, and that all the informant had to do was call. Id. Tellez then drove home while being observed by undercover officers who put Tellez's home under surveillance. Id. The informant placed a second call to Tellez the same day and arranged a second narcotics transaction. Id. Tellez agreed to the sale and told the informant that he would return to the informant's residence in a few hours. Id. Based on the above listed information, the investigating officer sought a warrant for Tellez's vehicle and person and an anticipatory warrant to search Tellez's residence in the event that narcotics were found on Tellez's person or in Tellez's vehicle. Id. While executing the warrants, the officers

found narcotics on Tellez's person and then proceeded to search Tellez's house pursuant to the anticipatory warrant. Id.

On appeal, Tellez challenged the anticipatory warrant. Id. The Eighth Circuit upheld the use of the anticipatory warrant and opined that there were sufficient grounds presented in the affidavit in support of the search warrant for the issuing judge to conclude that there was a fair probability that narcotics could be found at Tellez's residence, even if the officers executing the initial warrants had not discovered narcotics on Tellez's person. Id. The Eighth Circuit opined that the affidavit indicated the Tellez was a drug dealer, that he had offered to produce drugs in the future on demand, that a sale in the near future had been arranged, and that Tellez had been nowhere but his residence since concluding the first sale to the informant. Id.

The Eighth Circuit has also held that probable cause exists to search the home of a drug dealer in cases in which a supporting affidavit describes a defendant's ongoing drug trafficking activity and also contains a statement by the drafting officer indicating that, in the drafting officer's experience, it is reasonable to infer that evidence of ongoing drug trafficking activities may be found in the home of a drug dealer. United States v. Keele, 589 F.3d 940, 943-44 (8th Cir. 2009); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994)). Other circuits have come to similar positions. See United States v. Ross, 487 F.3d 1120, 1123 (8th Cir. 2007) (citing United States v. Wiley, 475 F.3d 908, 912–13 (7th Cir. 2007); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (noting that a magistrate may reasonably infer that evidence is likely to be found where drug dealers live); United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) (stating that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there); United States v. Thomas, 989 F.2d 1252, 1254–55 (D.C.Cir. 1993) (per curiam) (observations of drug trafficking occurring

away from dealer's residence can support a finding of probable cause for a search of the dealer's home); <u>United States v. Angulo–Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986) (stating that a magistrate may reasonably infer that evidence is likely found where drug dealers live); <u>United States v. Hodge</u>, 246 F.3d 301, 306 (3rd Cir. 2001) (finding it reasonable to search an experienced and repeat dealer's home)).[4]

Notably, Officer Burns' affidavit in support of his application for a search warrant does <u>not</u> include a statement indicating that, in his experience, drug dealers often keep records or other evidence of drug transactions in their homes. However, although the finding of probable cause may be stronger in cases in which such a statement is included in the affidavit supporting the application for a search warrant, there is no case law saying that such a statement is required. Indeed, there was no such statement in the warrant at issue in <u>Tellez</u>.

The Court concludes that the statements in Officer Burns' affidavit in support of his application for a warrant to search the Minneapolis residence indicating that Defendant had been involved in trafficking large amounts of marijuana to the Minneapolis area, had been implicated with a search warrant for narcotics in 2001, and had been found with a large amount of marijuana in his vehicle in July of 2014, provided Judge Caruthers with a substantial basis to conclude that Defendant's drug trafficking activities were ongoing. The Court also concludes that the fact that, after being called to arrange a narcotics transaction with the Minneapolis CI, Defendant left the Minneapolis residence and drove directly to the meeting site, with only a very brief stopover at the Oliver Avenue residence, provided Judge Caruthers with a substantial basis to conclude that there was a reasonable probability that evidence of Defendant's drug trafficking activities could be found at the Oliver Avenue house, <u>as well as</u>, the Minneapolis residence.

---

[4] <u>But see</u> <u>Ross</u>, 487 F.3d 1123 (noting that the Eighth Circuit has not established a per se rule that probable cause to arrest a drug dealer establishes probable cause to search the drug dealer's residence for records and paraphernalia).

Accordingly, Officer Burns' affidavit in support of his application for a warrant to search the Minneapolis residence provided probable cause to search the Minneapolis residence.

However, even if the Court were to find that probable cause did not exist to believe that evidence of contraband could be found at the Minneapolis residence, the Court concludes that Defendant's motion to suppress evidence gathered as a result of the execution of the search warrant should still be denied under the "good faith" exception set forth in United States v. Leon, 465 U.S. 897 (1984).

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing Leon, 468 U.S. at 922). Even if the Court were now to conclude that the affidavit supporting the August 15, 2014, search warrant application had not set forth facts within its four corners sufficient to demonstrate probable cause to search the Minneapolis residence, on the present record, law enforcement's good-faith reliance on the warrant ultimately issued by Judge Caruthers to search the Minneapolis residence militates against suppressing any evidence obtained during the search. See, Leon, 468 U.S. at 919-921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). See also, United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed.").

The Court's review of Officer Burns' affidavit in support of his application for the state court search warrant indicates that he presented Judge Caruthers with specific facts indicating

that Defendant had a history of ongoing involvement in trafficking marijuana, that Defendant had received a call at the Minneapolis residence arranging a narcotics transaction with the Minneapolis CI within the three days prior to Officer Burns applying for the search warrants, and Defendant had left that Minneapolis residence to drive directly to the meeting site with only a very brief stopover at the Oliver Avenue house. As discussed above, there is abundant case law indicating that evidence an individual has been involved in drug trafficking on an ongoing basis is sufficient, along with the training and experience of an experienced officer, to provide probable cause to search the individual's home. Accordingly, when executing the search warrant for the Minneapolis residence, Officer Burns and the other officers involved therein relied in good faith on the search warrant which had been issued by Judge Caruthers based upon the application for a warrant setting forth those facts.

      b.  Staleness

Defendant next argues that any probable cause supporting the issuance of the search warrant for the Minneapolis residence was stale by the time that the officers executed the warrant on August 20, 2014, five days after the warrant was issued, which itself was based in part on a controlled buy that was executed as much as three days prior to Officer Burns submitting the application for the warrant.

"A delay in executing a search warrant may make probable cause fatally stale." United States v. Rugh, 968 F.2d 750, 754 (8th Cir.1992). Although search warrants are to be executed promptly, it is generally accepted that the warrant need only be executed within a reasonable time after its issuance. See United States v. Shegog, 787 F.2d 420, 422 (8th Cir. 1986). "Execution within a reasonable time 'should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se

reasonable or unreasonable. Rather it should be functionally measured in terms of *whether probable cause still existed at the time the warrant was executed.*'" United States v. Robinson, 441 F. Supp. 2d 1029, 1033 (D. Minn. 2006) aff'd, 536 F.3d 874 (8th Cir. 2008) (quoting Shegog, 787 F.2d 422 (emphasis in Shegog)).

> The Eighth Circuit has explained:
>
> "[A] warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." United States v. Humphrey, 140 F.3d 762, 764 (8th Cir.1998). . . . There is no fixed formula for determining when information has become stale. United States v. Koelling, 992 F.2d 817, 822 (8th Cir.1993). The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation. Id. "In investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" United States v. Formaro, 152 F.3d 768, 771 (8th Cir.1998) (quoted case omitted).

United States v. Smith, 266 F.3d 902, 904-05 (8th Cir. 2001).

As the Court noted in the immediately previous section, the statements in Officer Burns' affidavit in support of his applications for the August 15, 2014, warrants indicated that Defendant had been involved in trafficking large amounts of marijuana to the Minneapolis area, that he had been implicated in a search warrant for narcotics in 2001, and that he had been found with a large amount of marijuana in his vehicle on July of 2014. This information provided Judge Caruthers with a substantial basis to conclude that Defendant's drug trafficking activities were ongoing.

In a case involving ongoing drug trafficking activities, the Eighth Circuit has found delays of five to seven days between the issuance and execution of warrants did not render stale the probable cause supporting the issuance of the warrants, even where the controlled buy supporting the issuance of the warrants took place as much as three days before the warrant was applied for. See United States v. Carnahan, 684 F.3d 732, 736 (8th Cir. 2012). In fact, the Eighth

Circuit has even held that an eight-day delay between the issuance of the warrant and the warrant's execution did not render stale the probable cause that had justified the issuance of the warrant in cases involving ongoing drug trafficking. United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993) (noting that probable cause existed to believe that drugs and drug proceeds existed eight days after the issuance of a warrant); United States v. Shegog, 787 F.2d 420, 422 (8th Cir. 1986) (same).

Since the statements in Officer Burns' affidavit in support of his application for the warrant to search the Minneapolis residence provided a substantial basis for Judge Caruthers to conclude that Defendant was engaged in ongoing drug trafficking, the fact that three days may have passed between the pertinent controlled buy and the application for the search warrants, and an additional five days passed between the issuance of the search warrants and their execution did not render Judge Caruthers' finding of probable cause stale.

Based on all of the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Search and Seizure, [Docket No. 27].

## III. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, [DOCKET NO. 28].

Defendant lastly moves the Court to suppress the statements that he made during his post-arrest interview with Officer Burns, arguing that the statements were the fruit of his unlawful warrantless arrest. Defendant asserts that his arrest was unlawful because the initial arresting officers did not inform him of the basis for the arrest and because the taint of the allegedly unlawful arrest was not purged by Officer Burns reading Defendant the Miranda warnings. The Government argues that Defendant's arrest was not unlawful, and that in any event, Defendant's statements were made voluntarily.

There is no evidence in the record regarding exactly what the arresting officers told Defendant when he was initially arrested. However, the evidence in the record presently before the Court does indicate that Officer Burns informed Defendant during the interview only a short time after his arrest that Defendant was suspected of being involved in the sale and distribution of marijuana.

Assuming for the sake of argument that the arresting officers did fail to inform Defendant of the basis for his arrest, Defendant offers no case law indicating that such a failure would per se render his arrest unlawful. The case law revealed by the Court's independent research indicates that a failure to inform a defendant of the true nature of the basis for an arrest does not invalidate an arrest, provided the arrest was based on probable cause. See, e.g., United States v. Story, 463 F.2d 326, 328-29 (8th Cir. 1972); Gov't of Virgin Islands v. Gereau, No. CRIM. 97-1972, 1973 WL 354203, at *16 (D.V.I. July 23, 1973); U. S. ex rel. Eidenmuller v. Fay, 240 F. Supp. 591, 596 (S.D.N.Y. 1965); see also Barnett v. United States, 384 F.2d 848, 862 n.9 (5th Cir. 1967) (holding that the arresting officers' failure to formally inform arrestees of the cause of the arrest did not invalidate the arrest, only shifted to the prosecution the burden of proof on the issue of probable cause).

"Probable cause to make a warrantless arrest exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." United States v. Guevara, 731 F.3d 824, 832 (8th Cir. 2013), cert. denied, 134 S. Ct. 1346 (2014) (citations and internal quotation marks omitted). In the present case, it is clear that, based on the information Officer Burns had regarding Defendant's sale of marijuana to the Minneapolis CI, probable cause existed to believe that Defendant had committed a crime. Because probable cause existed to arrest Defendant,

Defendant has failed to prove that his arrest was unlawful or that the Court must suppress the statements resulting from his arrest as fruit of the poisonous tree.[5]

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 28].

## IV.     CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion to Suppress Search and Seizure, [Docket No. 27], be **DENIED**; and,

2.   Defendant Motion to Suppress Statements, [Docket No. 28], be **DENIED**.

Dated: July 13, 2015                                          s/Leo I. Brisbois
                                                             Leo I. Brisbois
                                                             U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

[5] Because the Court finds that Defendant's arrest was lawful and because Defendant does not argue that he made the statements during his interview with Officer Burns involuntarily, the Court need not address the Government's argument that Defendant's statements were made voluntarily.